IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PURPLUS INC.,

    Plaintiff,

v.

HARTFORD CASUALTY INSURANCE,

    Defendant.

No. C 12-03689 JSW

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Now before the Court is the motion of defendant Hartford Casualty Insurance Company ("Hartford") to dismiss the complaint brought by plaintiff Purplus, Inc. ("Purplus"). Having carefully considered the parties' arguments and the relevant legal authority, the Court hereby GRANTS Hartford's motion to dismiss without leave to amend.

**BACKGROUND**

Purplus acquired a business liability insurance policy ("Policy") from Hartford which provided "advertising injury" coverage. It covered the period from March 28, 2009 to March 29, 2010. (Compl. ¶ 8.)

On October 30, 2009, Adobe filed a complaint ("Adobe Complaint") against Purplus in the United States District Court for the Northern District of California, alleging causes of action for copyright and trademark infringement and seeking monetary damages, injunctive relief, and attorney's fees ("Adobe Action"). (*Id*. at ¶ 9.)

Purplus tendered the Adobe Complaint to Hartford on or about January 4, 2010. (*Id*. at ¶ 10.) On or about January 15, 2010, Hartford refused to defend or indemnify Purplus in the

1 Adobe Action, claiming that the Policy did not cover the claims alleged in the Adobe
2 Complaint. (*Id*. at ¶ 11.) On or about March 31, 2010, Purplus forwarded to Hartford examples
3 of Purplus's advertising, which Purplus argued revealed a potential claim for an advertising
4 injury in the Adobe Complaint. (*Id*. at ¶ 13.) Hartford and Purplus exchanged further
5 communications in which Purplus and Hartford disagreed over the Policy's application and
6 coverage. (*Id*. at ¶¶ 14-15.)

7 Purplus retained legal counsel to defend itself in the Adobe Action, and thereafter
8 incurred attorney's fees, costs, and expenses in funding its defense. (*Id*. at ¶ 16.) Purplus and
9 Adobe began settlement negotiations in September 2010, which resulted in a settlement whose
10 terms required the settlement amount to remain confidential. (*Id*. at ¶ 18-21.) An exception to
11 the confidentiality clause allows Purplus to disclose that the case "was resolved for a five-figure
12 amount." (*Id*. at 21.)

13 On July 13, 2012, Purplus filed its complaint against Hartford for declaratory relief,
14 breach of contract (duty to defend), bad faith, and breach of contract (duty to indemnify),
15 claiming that the Adobe Complaint had triggered coverage under the Policy. (*Id*. at ¶¶ 23-42.)

## ANALYSIS

**A.  Request for Judicial Notice.**

When the legal sufficiency of a complaint is tested by a motion to dismiss, review is limited to the contents of the pleadings. *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). However, a court "may consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States. v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)). Furthermore, pursuant to Federal Rule of Evidence 201, courts may take judicial notice of matters of public record, but not of facts that may be subject to reasonable dispute. *Id*. (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

Hartford asks this Court to take judicial notice of (1) the complaint filed in the Adobe Action; and (2) Purplus's insurance policy with Hartford.

Purplus's complaint refers to the Adobe Complaint and to its policy with Hartford. Each of these documents is central to Purplus's claim. Furthermore, neither of the parties have challenged the authenticity of the documents. Thus, because the documents satisfy the three-part test set out in *Corinthian Colleges*, this Court takes judicial notice of: (1) the complaint filed in the Adobe Action, in the Northern District of California, Case No. 09-CV-05170-RS, *Adobe Systems Incorporated v. Paul Santos*, et al.; and (2) Purplus's Hartford Policy, number 57 SBN K17057, with effective dates from March 28, 2009 to March 28, 2010. (Request for Judicial Notice ("RJN"), Exs. 1-2.)

**B.      Legal Standard on Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to

3

amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**1. The Policy.**

Hartford issued an insurance policy to Purplus effective from March 28, 2009 to March 28, 2010. (RJN, Ex. 2 at 27.) The following provisions of the Policy are relevant to this dispute:

> **BUSINESS LIABILITY COVERAGE FORM**
> **A. COVERAGES**
> **1. BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**
>
> **Insuring Agreement**
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising injury" to which the insurance does not apply.
>
> **b.** This insurance applies:
> ...
>
> **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.
>
> (*Id*. at 64.)

The Policy defined the relevant terms thusly:

> **G. LIABILITY AND MEDICAL EXPENSES DEFINITIONS**
>
> **1.** "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services....
>
> However, "advertisement" does not include:
> **a.** The design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products;
> ...
>
> **2.** "Advertising idea" means any idea for an "advertisement."
> ...

4

    **17.** "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

...

    **f.** Copying, in your "advertisement," a person's or organization's "advertising idea" or "style of advertisement";

(*Id*. at 83, 85-86.)

The Policy provides the following exclusions:

**EXCLUSIONS**
    **1. Applicable to Business Liability Coverage**

This insurance does not apply to:

...

    **p. Personal and Advertising Injury**
"Personal and advertising injury":

...

    **(7)** Arising out of any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

However, this exclusion does not apply to infringement, in your "advertisement," of

    **(a)** Copyright;
    **(b)** Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity;

(*Id*. at 66, 71.)

**2. The Adobe Action.**

On October 30, 2009, Adobe filed a complaint against Purplus alleging copyright and trademark infringement. (RJN, Ex. 1 at 4-5.) In its complaint, Adobe alleged that it filed suit as a result of Purplus's "systematic, unauthorized copying, distribution and use of Adobe's software products in interstate commerce through sales through various Internet sites." (*Id*. at 1.) Furthermore, Adobe alleged that Purplus's actions, "commonly known as software piracy, are willful and cause substantial damage to Adobe and to the software industry." (*Id*.) Adobe also claimed that Purplus, "through Internet sites, including but not necessary [sic] limited to www.purplus.net (the 'Website') have made, offered for sale, sold, and distributed unauthorized copies of Adobe Software (the 'Unauthorized Software Product') including at least Adobe

Acrobat 9.0 Professional (the 'Adobe Software') and likely other products." (*Id.* at 2.)

### 3. Governing Insurance Coverage Principles.

California's substantive insurance law governs in this diversity case. *State Farm Mut. Auto. Ins. Co. v. Khoe*, 884 F.2d 401, 405 (9th Cir. 1989). In a dispute over insurance policy coverage, the burden is on the insured to bring the claim within the basic scope of coverage. *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 16 (1995). Prior to examining exclusions, the court must first examine the coverage provisions to determine whether a claim falls within the policy terms. *Id.* Under California law, "a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. The carrier must defend a suit which potentially seeks damages within the coverage of the policy." *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010) (quoting *Montrose Chem. Corp. of Cal. v. Superior Court*, 6 Cal. 4th 287, 296 (1993)). The insured "need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." *Montrose,* 6 Cal. 4th at 300. Furthermore, "'the insurer's duty is not measured by the technical legal cause of action pleaded in the underlying complaint, but rather by the potential for liability under the policy's coverage as revealed by the facts alleged in the complaint or otherwise known to the insurer.'" *Hudson*, 624 F.3d at 1267 (quoting *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 606 (1986)). In instances where "'there is doubt as to whether the duty to defend exists, the doubt should be resolved in favor of the insured and against the insurer.'" *Id.* (quoting *CNA*, 176 Cal. App. 3d at 607). However, "an insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at some future date." *Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1114 (1995). "Although an insurer's duty to defend is broader than the duty to indemnify, the duty to defend depends upon facts known to the insurer at the inception of the suit." *Id.*

To interpret the meaning of the policy language, courts must first look at the written provisions of the policy. "If the policy language is clear and explicit, it governs. ... When interpreting a policy provision, we must give its terms their ordinary and popular sense, unless

6

used by the parties in a technical sense or a special meaning is given to them by usage." *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (citations omitted).

Policy exclusions are strictly construed, while exceptions to exclusions are broadly construed in favor of coverage. *MacKinnon*, 31 Cal. 4th at 648; *Aydin Corp. v. First State Ins. Co.*, 18 Cal. 4th 1183, 1192 (1998). An insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. Any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect. *MacKinnon*, 31 Cal. 4th at 648.

A policy provision is ambiguous if it is susceptible to two or more reasonable constructions. *E.M.M.I., Inc. v. Zurich American Ins. Co.*, 32 Cal. 4th 465, 470 (2004). Any ambiguous terms are interpreted in favor of finding coverage, consistent with the insured's reasonable expectations. *Id*.

      **a.**    **Advertising Injury Coverage.**

           **i.**    **Purplus Fails to Demonstrate that the Adobe Complaint Revealed a Potential for Coverage as a Matter of Law.**

Hartford moves to dismiss Purplus's complaint on the grounds that Purplus cannot meet its burden to establish that allegations in the Adobe Complaint triggered Hartford's duty to defend.

Under California law, "the carrier must defend a suit which potentially seeks damages within the coverage of the policy." *Hudson*, 624 F.3d at 1267 (quoting *Montrose*, Cal. 4th at 296). Here, in order to fall within Policy coverage, Purplus must demonstrate that allegations in the Adobe Complaint revealed a potential liability for an "advertising injury." Under the Policy, an advertising injury is an infringement, in the insured's advertisement, of another's copyrighted advertising idea or style, or non-trademarked slogan. (*See* RJN, Ex. 2 at 83, 86.) The Adobe Complaint contained claims for copyright infringement of Adobe software and trademark infringement of Adobe trademarks. As Purplus concedes, these claims are not covered by the Policy. (*See* Opp. Br. at 2.) Thus, the legal causes of action in the Adobe Complaint did not trigger Hartford's duty to defend.

7

However, factual allegations in the underlying complaint may trigger an insurer's duty to defend, even if the underlying "technical legal causes of action" do not reveal a potential for coverage. *See Hudson*, 624 F.3d at 1267 (quoting *Montrose*, Cal. 4th at 296). This Court has not found any facts alleged in the Adobe Complaint that reveal a potential liability for an advertising injury. Purplus argues that certain words or phrases in the Adobe Complaint like "advertising, sale and/or offer for sale" triggered Hartford's duty to defend. (*See* Opp. Br. at 4.) Certainly, Adobe used the word "advertising" when framing its trademark cause of action. However, references to the term "advertisement" do not transform trademark infringement allegations into advertising injuries. *See Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1275 (1992) (explaining that "a claim of patent infringement does not 'occur in the course ... of advertising activities' within the meaning of the policy even though the insured advertises the infringing product, if the claim of infringement is based on the sale or importation of the product rather than the advertisement"). Moreover, a party cannot excise particular words or phrases from their context so as to manufacture coverage. *See Storek v. Fidelity & Guar. Ins. Underwriters, Inc.*, 504 F. Supp. 2d 803 (N.D. Cal. 2007) (holding "an insurer owes no duty to defend based upon mere 'speculation' as to claims that a third party might have brought"). Thus, this Court finds that there are no factual allegations in the Adobe Complaint which could have triggered Hartford's duty to defend.

Because the Adobe Complaint did not contain alleged facts or legal causes of action that created a potential liability for an advertising injury, this Court finds that Purplus has failed to meet its burden to demonstrate coverage.

### ii. Purplus Fails to Demonstrate that Extrinsic Facts Triggered Hartford's Duty to Defend as a Matter of Law.

Purplus argues that even if the Adobe Complaint did not trigger coverage, Hartford's duty to defend arose from extrinsic facts, related to Purplus's advertisements, that were known to Hartford.

Under California law, an insurer's duty to defend is determined by "the facts and inferences known to an insurer from the pleadings, available information and its own

8

investigations at the time of the defense." *CNA*, 176 Cal. App. 3d at 610. Purplus argues that its advertisements relating to Adobe, some of which appeared on its website and others which it sent to Hartford after being served with the Adobe Complaint, constituted extrinsic facts that triggered Hartford's duty to defend. However, there can be "no evidence to impose a duty to defend when the underlying lawsuit sets forth neither the facts nor the legal claims necessary to bring the lawsuit within the terms of the policy." *Storek*, 504 F. Supp. 2d at 812. Additionally, "the duty to defend is broad, but not so expansive that it requires an insurer to undertake a defense as to claims that are both factually and legally untethered from the third party's complaint." *Id*. As discussed above, this Court finds that no legal causes of action or factual allegations in the Adobe Complaint revealed a potential liability for an advertising injury. Thus, this Court finds that Purplus's advertisements could not have triggered Hartford's duty to defend.

### b. The Intellectual Property Exclusion.

Notwithstanding the fact that Purplus has not alleged sufficient facts to demonstrate coverage under the Policy, specific exclusions also bar coverage of the claims in the Adobe Complaint.

#### i. The Intellectual Property Exclusion Bars the Underlying Claims as a Matter of Law.

The Policy's intellectual property exclusion bars coverage of any intellectual property infringement unless the infringement is a copyright violation of another's advertising idea or style, or an infringement of a non-trademarked slogan. (*See* RJN, Ex. 2 at 71.) The Adobe Complaint alleged causes of action for copyright infringement of Adobe's software and trademark infringement of Adobe trademarks. (*See* RJN, Ex. 1 at 2-6.) Neither of these causes of action constituted a copyright infringement of an advertising idea or style, or an infringement of a non-trademarked slogan. As a result, the intellectual property exclusion barred coverage of the claims alleged in the Adobe Action.

For these reasons, this Court finds that Purplus has failed to a state a claim upon which relief can be granted. Furthermore, this Court finds that there are no facts in the record upon

9

which Purplus can rely to amend its complaint so as to state a legally viable claim. Therefore, Purplus's complaint is dismissed without leave to amend.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Hartford's motion to dismiss without leave to amend.

**IT IS SO ORDERED.**

Dated: March 19, 2013

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE